1  Robert C. Weiss (State Bar No. 39929)
   robertweiss@rcwlaw.com
2  LAW OFFICES OF ROBERT C. WEISS
   3770 Highland Avenue, Suite 203
3  Manhattan Beach, CA 90266
   Telephone: (310) 545-9854
4  Facsimile: (310) 545-9853

5  Theodore S. Maceiko (State Bar No. 150211)
   ted@maceikoip.com
6  MACEIKO IP
   3770 Highland Avenue, Suite 207
7  Manhattan Beach, CA 90266
   Telephone: (310) 545-3311
8  Facsimile:  (310) 545-3344

9  Michael L. Meeks (State Bar No: 172000)
   mmeeks@buchalter.com
10 Carol A. Dwyer (State Bar No. 239769)
   cdwyer@buchalter.com
11 BUCHALTER NEMER
   A Professional Corporation
12 18400 Von Karman Avenue, Suite 800
   Irvine, CA 92612-0514
13 Telephone: (949) 760-1121
   Facsimile: (949) 720-0182
14
   Attorneys for Plaintiff, Counter-defendant,
15 COMPULINK MANAGEMENT CENTER, INC.
   dba LASERFICHE

16

17

18                    **UNITED STATES DISTRICT COURT**

19                    **CENTRAL DISTRICT OF CALIFORNIA**

20

| COMPULINK MANAGEMENT CENTER, INC. dba LASERFICHE, | Case No. 2:10-CV-7843-JFW(Ex) |
|---|---|
| Plaintiff, | **JOINT STATEMENT RE COMPULINK'S MOTION IN LIMINE # 5: TO PRECLUDE ANY CLAIM OR ARGUMENT THAT SAP DOES NOT USE "RUN SMARTER" AS A TRADEMARK BECAUSE IT DOES NOT CLAIM ANY TRADEMARK RIGHTS AND/OR HAS NOT USED A TRADEMARK SUPERSCRIPT ("TM" OR "R-IN-A-** |
| vs. | |
| SAP AMERICA, INC., SAP AG, SAP GLOBAL MARKETING, INC., and Does 1 through 10, | |
| Defendants. | |

|  | |
|---|---|
| | **CIRCLE") AND/OR HAS NOT APPLIED TO REGISTER "RUN SMARTER" AS A TRADEMARK**<br><br>PT Conf. Date: 9/2/2011<br><br>Hearing Date: 9/9/2011<br><br>Trial Date: ___ 9/20/2011___ |
| SAP AMERICA, INC., and SAP GLOBAL MARKETING, INC.,<br><br>Counterclaimants,<br><br>vs.<br><br>COMPULINK MANAGEMENT CENTER, INC dba LASERFICHE,<br><br>Counter-defendant. | |

Pursuant to §5 ("MOTIONS IN LIMINE") of the court's Scheduling and Case Management Order (Doc. #23), each party herein sets forth its respective position, as follows, regarding **COMPULINK'S MOTION IN LIMINE # 5: TO PRECLUDE ANY CLAIM OR ARGUMENT THAT SAP DOES NOT USE "RUN SMARTER" AS A TRADEMARK BECAUSE IT DOES NOT CLAIM ANY TRADEMARK RIGHTS AND/OR HAS NOT USED A TRADEMARK SUPERSCRIPT ("TM" OR "R-IN-A-CIRCLE") AND/OR HAS NOT APPLIED TO REGISTER "RUN SMARTER" AS A TRADEMARK**

## COMPULINK'S POSITION

One who trespasses upon a rival's trademark typically will *not* say that the rival's mark is his instead – especially not in a case like this, where the infringer knows that his rival has registered the mark for goods or services substantially the same as those on which the infringer uses it; knows that he himself has *not* registered it; and knows that he himself *cannot* claim any right to register the mark

because he lacks priority of use;[1] and knows that he is using a mark not merely similar but identical. A defendant in SAP's position has limited defensive options: He *cannot* say that the mark rightfully belongs to him and he *cannot* argue that the case involves two valid trademarks that do not collide.

Realizing that these positions are foreclosed to it, SAP has taken the only litigation position it can: It argues that the mark is invalid and that SAP is not using the mark as a trademark. In these circumstances, SAP would *of course* not be so foolhardy as to let itself be seen using the RUN SMARTER mark with a "TM" superscript or attempt to register the mark as its own.

SAP previously argued that SAP is not infringing or competing unfairly or diluting because it has not tried to claim any trademark rights in the RUN SMARTER mark. Such an argument is simply a red herring. It is irrelevant, for it does render either "more probable or less probable than it would be without the evidence" the conclusion that SAP is not a trademark infringer or an unfair competitor or a diluter (FRE 401). To inquire whether SAP has tried to register RUN SMARTER as its own mark, or to ask whether SAP has claimed unregistered trademark rights in RUN SMARTER (as by affixing a "TM" superscript), is in no way probative on the question whether SAP has used RUN SMARTER as a trademark.

SAP cites cases that, in discussing whether the defendant's use of the mark was a "trademark use" or a use within the fair use doctrine, noticed and perhaps gave some weight to the fact that the defendant did nor mark the subject phrase with a trademark symbol nor seek to register it. But in none of these cases were

---

[1] Although SAP has not conceded that it lacks priority of use, its seeming suggestion that it may have priority is puzzling in view SAP's stubborn insistence that that none of its uses of RUN SMARTER have ever been trademark uses. It also relies upon isolated uses which occurred ten (10) years ago and which are entirely different from its present use of RUN SMARTER.

there facts that parallel the facts surrounding SAP's use of RUN SMARTER as a central part of its massive "Run Better Tour" and other instances of SAP's use of RUN SMARTER that suggest a motive and purpose to overwhelm Compulink's mark by reverse confusion.  Given SAP's purpose to continue to use RUN SMARTER to market its products, it is tactically understandable why SAP would not admit to validity of the mark by affixing a trademark symbol in connection with its own uses of RUN SMARTER.  For the same reason, SAP would not attempt to register RUN SMARTER as a trademark for the same goods and services for which Compulink uses RUN SMARTER.

The facts here are, moreover, remote from those of *Wonder Labs, Inc. v Procter & Gamble Co.,* 728 F. Supp. 1058, 1064 (S.D.N.Y. 1990).  In *Wonder Labs* there were compelling reasons to conclude that Procter & Gamble's use of "the dentists' choice" (in advertising of CREST toothpaste) was fair use and not trademark use, and therefore could not be an infringement of plaintiff's registered trademark DENTISTS CHOICE for toothbrushes.  As the court noted (728 F. Supp. at 1061), all of the CREST advertisements also included an endorsement by the American Dental Association, along with explanatory text indicating that the toothpaste's cavity-fighting properties had been recognized by the American Dental Association, and the text of the American Dental Association's endorsement itself – all of which persuaded the court that CREST could be and was being fairly described as "the dentists' choice" to fight cavities.  There are no parallel facts in our case: It is not as if the American Software Engineering Association (if there is such an organization) had officially endorsed SAP's product and the mark being imitated was "Software Engineer's Choice."

A case closer to our facts is *Bellagio Jewelry Inc. v Croton Watch Co., Inc.,* 2008 WL 3905895 (C.D. Cal., August 20, 2008), a reverse-confusion case where a large junior user "swamped" the smaller senior user's BELLAGIO mark for

4

JOINT STATEMENT RE: PLAINTIFF'S MOTION *IN LIMINE* NO. 5

watches by using that mark to sell its own (not plaintiff's) watches on ShopNBC, a well-known television shopping network, in very substantial volume, using the BELLAGIO mark.  The Court, in deciding to award defendant's profits on some of those sales to plaintiff, reasoned (*id.,* at *13) as follows:

> [T]he Court finds that a portion of Defendant's profits can be attributed to watch sales made after Plaintiffs sent Croton the cease and desist letter.  After receiving the cease and desist letter, Croton was put on actual notice, which logically demonstrates that any infringing conduct thereafter was done willfully.

Even if evidence and argument along these lines were not excludable under FRE 401 as irrelevant, it would be appropriate to exclude it for at least two of the reasons articulated in FRE 403.  First, any probative weight that this line of argument or proof could possibly have would be "substantially outweighed by the danger of … confusion of the issues, or misleading the jury."   It would, specifically, tend to confuse and mislead the jury about what trademark infringement is, by focusing the jury's attention *away from* the fact that trademark infringement entails "use in commerce" of the registered mark or a colorable imitation of it in a way that is "likely to cause confusion, or to cause mistake, or to deceive" (15 U.S.C. §1114(1)(a).  The statutory definition does not require that the use be made in connection with a "this-is-my-trademark" statement.  It is enough if the "use" tends toward confusion, mistake or deception – regardless of whether the infringer tries to characterize his use as generic or merely descriptive or otherwise a non-trademark use, as an accused junior user of an exactly identical mark will often do.

Notably, §1114(1)(a) does *not* define as an act of infringement the act of applying to register, registering or applying a "TM" superscript to a mark.  So the question whether SAP has done these things is a question that would be remote

from, even if it were not altogether irrelevant to, the question of trademark infringement.

Just as applying to register a mark is not an act of infringement, the fact that SAP did *not* apply to register RUN SMARTER does not negate infringement.

The same point can be made about dilution: It is "commercial use of a mark or trade name that is likely to cause dilution" that is the predicate act for purposes of a dilution claim. Applying to register, registering, or applying a "TM" superscript" to a mark obviously is not a "commercial use," does not constitute the predicate act, and so cannot be an act of dilution. Whether SAP has done these things is thus as remote from the question of dilution liability as it is from the question of infringement liability.

Tendency to mislead and confuse the jury is not the only reason why FRE 403 should be applied to exclude argument and evidence as to whether SAP applied to register, registered or applied a "TM" superscript to RUN SMARTER. A second reason is "undue delay [and] waste of time." Allowing such remotely probative matter (if it is not altogether irrelevant, as we contend it is) to be placed before the jury would, at the least, necessitate explanations and rebuttals that would consume time better spent on the real and substantial issues in the case.

## SAP'S RESPONSE TO COMPULINK'S MOTION IN LIMINE #5

Citing no case law or cognizable evidence, Compulink's Motion in Limine #5 is built on patently false assumptions and blatant surmise.[2] In its motion

---

[2] On August 24, 2011, the day before the deadline for filing all joint motions in limine (in addition to the Final Pretrial Order and proposed jury instructions, among other things), Compulink served materially revised versions of all of its motions in limine that include arguments and case law that were never cited in the letter required in advance of in limine motions under section 5 of the Court's Amended Scheduling and Case Management Order or in the initial versions of Compulink's motions in limine provided to SAP to prepare its response. *See, e.g.*, pp. 3-5, supra. As a result, the parties never met and conferred regarding the belatedly-raised issues as required by section 5 of the Order, and Compulink unfairly deprived SAP of reasonable time to respond to its new arguments. Indeed, the Court's Order does

Compulink assumes that SAP does not have priority of use, is using "Run Smarter" as a trademark, and that SAP's use would be perceived by relevant consumers as trademark use.  Moreover, it conjures up a tale of SAP's intent to trade nefariously on Compulink's trademark rights, implying that SAP knows that it "*cannot* claim any right to register the mark, because [it] lacks priority of use; and knows that [it] is using a mark not merely similar but identical."  Not surprisingly, none of these assumptions holds up to scrutiny or are substantiated by cognizable facts.  The lack of case law authority and factual support for Compulink's position alone bars Compulink's motion in limine seeking to preclude SAP from presenting probative testimony about its use of the ordinary words "Run Smarter" without any trademark marking and without claiming or seeking any trademark rights.

  First, Compulink ignores that SAP used the words "Run Smarter" in their ordinary meaning *long before* Compulink supposedly commenced its first use of the words as a trademark.  For example, in a marketing piece first published in 2001(and which continues to be available on the Internet today) SAP used the words "Run Smarter" in their ordinary meaning.  The marketing piece bears the title "Helping Reebok run smarter…."  Declaration of Brian M. Hom ("Hom Decl.") in Support of SAP's Opposition to Motions in Limine ¶ 9, Ex. 8, Declaration of Costanza Castelnuovo-Tedesco at Ex. 8, pg. 82.  Similarly, in 2001, a magazine called the SAP INSIDER, published by Wise Publications, featured an article by an SAP employee using the words "run leaner, smarter and faster" in their ordinary meaning when discussing SAP software offerings.  Hom Decl. ¶ 12, Ex. 11.  *See also.,* Hom Decl. ¶ 13, Ex. 12.  The fact that SAP does not claim trademark rights in any of these uses of "run smarter" and that SAP has never claimed trademark rights in these ordinary words, but has used them over the years, provides probative evidence of whether SAP's current use of "run smarter" is

not permit any supplemental filing by either party.  Order at 18.

descriptive and in good faith. Thus, the evidence being sought to be excluded is probative of issues in dispute. Indeed, the evidence Compulink seeks to preclude here has been held relevant and probative by other courts in similar contexts, but Compulink does not discuss, let alone distinguish, this case law.

In this regard, this Court in connection with the hearing on Preliminary Injunction, considered as probative how the words "Run Smarter" were used by both parties, stating:

> The next factor the Court has considered is…the marks in their entirety as they appear in the marketplace…First, the Court finds that SAP does not use the phrase run smarter as a mark, but instead only uses the words in their ordinary commonplace meaning. Secondly the appearance of the phrase used by plaintiff and defendant is different. The words run smarter in plaintiff's ads are in lower case letters and in orange type face and are always in close proximity to the plaintiff's trademark name Laserfiche, as distinguished from the defendants' use of the Run Smarter…Moreover, in each ad the trade dress of plaintiff and defendant is prominently displayed and the respective company names and logos are always in close proximity to the Run Smarter phrase. And in its commercials SAP marks appear at the end of each T.V. spot…"

Hom Decl. ¶ 10, Ex. 9, January 3, 2011 hearing transcript at 35:5-36:3. As this Court has recognized, this type of factual analysis of how the uses appear in the marketplace is germane and probative of likelihood of confusion.

Consistent with the Court's analysis in connection with Compulink's

preliminary injunction motion, other courts have undertaken similar factual determinations both for likelihood of confusion as well as for determinations of fair use. In connection with those analyses, courts have relied on the lack of trademark markings and on the lack registrations for the mark at issue as probative evidence.

For example, in *Bell v. Harley Davidson Motor Co.*, 539 F. Supp. 2d 1249, 1257 (S.D. Cal. 2008), the court specifically noted that "*Harley-Davidson never registered "Ride Hard" as a trademark*, nor did it locate the phrase on its merchandise (e.g., hang tags or labels) where one would expect to find the source-identifiers of a product." *Id.* (emphasis added.) The Court went on to note that Harley-Davidson does not use "Ride Hard" exclusively, but instead employs a wide variety of riding-related slogans…." *Id.* This is entirely consistent with SAP's use of "Run- based" phrases, such as "Run Better," "Run Smarter," "Run Stronger," etc.

Likewise, the Fifth Circuit in the case of *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 788, 796 (5th Cir. 1983), relied on by the *Bell* court, affirmed a bench trial ruling in favor of the defendant on fair use, acknowledging that defendants used the term "Fish Fry" fairly and in good faith: they did not intend trademark use, specifically noting that defendant *never attempted to register the phrase as a trademark*. *Id.* (Emphasis added). Similarly, the court in *Dessert Beauty, Inc. v. Fox*, 568 F. Supp. 2d 416, 424-26(S.D.N.Y. 2008), determined that use of the phrase "love potion" was fair use, in part, because it was never depicted with the ™ symbol. *See also Sunmark, Inc. v. Ocean Spray Cranberries, Inc.*, 64 F.3d 1055, 1059 (7th Cir. 1995) (failure to claim exclusivity in "sweet-tart" evidence of non-trademark use.).

Based on established case law, whether SAP's use of the words "Run Smarter" at any time was accompanied by a claim of trademark rights is probative of consumer perceptions as to the similarity of use, and SAP's intent for likelihood

of confusion analysis. It is also probative of fair use. Certainly, if SAP had used a ™ marking or ® marking with the words "Run Smarter," or applied to register "Run Smarter" as a trademark, it would be probative of the nature of SAP's use. Conversely, the absence of any trademark claim remains probative of SAP's fair use, and for likelihood of confusion analysis.

Testimony to that effect -- that the uses do not claim any trademark rights and that no claim was ever made as to trademark rights -- therefore cannot be prejudicial or misleading to the jury. Indeed, SAP's consistent approach regarding its use of the words "Run Smarter" and other Run-based words provide ample evidence of good faith and consumer perception. *See, Bell v. Harley Davidson Motor Co.*, 539 F. Supp. 2d at 1254-55 (Harley Davidson's use on t-shirts and in ads before Bell of "Ride Harder" may defeat Bell's trademark rights).

Undeterred by the facts or the law, Compulink improperly asserts conclusory claims that SAP knew about Compulink and intentionally decided not to make any trademark claim. See, supra at 3: 20-25. To the contrary, SAP witnesses have testified that they never heard of Laserfiche or Compulink before this lawsuit. *See* Hom Decl. ¶ 4, Ex. 2, Deposition of Costanza Castelnuovo-Tedesco at 134:21-135-6; Hom Decl. ¶ 5, Ex. 4, Deposition of Andrew Cabanski-Dunning at 60:10-15; Hom Decl. ¶ 6, Ex. 5, Deposition of Stephanie Buscemi at 122:19-21; Hom Decl. ¶ 7, Ex. 6, Deposition of Michael Shubra at 169:8-17; Hom Decl. ¶ 8, Ex. 7, Declaration of Stephen G. Shander at ¶11; Hom Decl. ¶ 9, Ex. 8, Declaration of Costanza Castelnuovo-Tedesco at ¶3. There is simply no evidence that supports Compulink's unsupported claim that SAP failed to mark "Run Smarter" as a trademark to thwart Compulink's trademark rights. Compulink's claim is just that – an unsupported allegation without any factual underpinning.

More importantly, Compulink's unsupported allegations fail in the face of established case law. SAP's use of "Run Smarter" before and after Compulink

commenced use supports its fair use defense and does not imply any nefarious intentions. *See Bell v. Harley Davidson Motor Co.*, 539 F. Supp. 2d at 1258-59 (holding continued use not bad faith for fair use defense); *Dessert Beauty*, 568 F. Supp. 2d at 427 (holding that failure to cease use of alleged trademark after receiving cease and desist letter does not evidence bad faith where defendant believed it was using mark in its descriptive sense); *Wonder Labs, Inc. v. Procter & Gamble Co.*, 728 F. Supp. 1058, 1064 (S.D.N.Y. 1990) (failure to abort advertising campaign upon receipt of cease and desist letter "is absolutely no proof that the defendant acted in bad faith to capitalize on the plaintiff's trademark"). *See also One Industries, LLC v. Jim O'Neal Distributing Inc.*, 578 F.3d 1154, 1163-64 (9th Cir. 2009) (knowledge of a competitor's mark does not suffice to establish an intent to deceive consumers, also noting (as in SAP's case) use of house mark on all uses).

Though this motion, which fails to cite a single case or cognizable fact, Compulink attempts to exclude valid and probative evidence that supports SAP's position that there is no likelihood of confusion, that SAP's use was fair use, and that SAP's use was not designed to intentionally confuse. Moreover, Compulink has not (and cannot) claim any valid prejudice from the admission of this evidence. The evidence sought to be excluded is probative of the exact issues Compulink would like to ignore, but cannot ignore under governing law.

Accordingly, this motion in limine should be denied in its entirety.

Respectfully submitted,

| | | |
|---|---|---|
| 1 | Dated: August 25, 2011 | LAW OFFICES OF ROBERT C. WEISS |
| 2 | | BUCHALTER NEMER |
| 3 | | A Professional Corporation |

By: /s/ Michael L. Meeks
    Michael L. Meeks
    Attorneys for Plaintiff
    COMPULINK MANAGEMENT
    CENTER, INC. dba LASERFICHE

Dated: August 25, 2011    MORGAN, LEWIS & BOCKIUS LLP

By: /s/ Rochelle D. Alpert
    Rochelle D. Alpert
    Attorneys for Defendants and
    Counterclaimants SAP America, Inc.
    and SAP Global Marketing, Inc.